# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK INC., <br><br>        Plaintiffs, <br><br>   v. <br><br> EMBODIMENT MEDSPA LLC, <br><br>        Defendant. | Case No. _____ |

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Embodiment MedSpa LLC ("Defendant") for trademark infringement and false advertising and seek injunctive, mofnetary, and other relief. Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts and on information and belief as to all other matters.

## <u>INTRODUCTION</u>

1. Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2. The development of semaglutide is an example of Novo Nordisk's commitment to innovation for those living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo

Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.     Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide, and is also the only company authorized to identify its medicines containing semaglutide using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

4.     The FDA has not approved any generic versions of these medicines. To the contrary, the FDA has sent warning letters to companies that claimed that their unapproved drug products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

5.     Plaintiffs bring this action pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, related state laws, and the common law arising out of Defendant's false advertising.

6.     Defendant uses, markets, and sells to patients compounded drug products that purport to contain semaglutide. Even though such compounded

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are the same as, or equivalent to, Novo Nordisk's FDA-approved medicines.

7.     Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

8.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

9.     Plaintiff NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

10.     NNI promotes, offers, and/or sells Novo Nordisk's Ozempic® and Wegovy® medicines throughout the United States, including in this District. NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale and sell Ozempic® and Wegovy® medicines in the United States.

11.     Defendant Embodiment MedSpa LLC is a Florida limited liability company with a business address at 4710 N. Habana Avenue, Suite 202, Tampa, FL 33614.

3

12.   Defendant sells and promotes compounded drug products that purport to contain semaglutide and that are not approved by the FDA ("Unapproved Compounded Drugs"). Defendant and uses the Ozempic® and Wegovy® marks in its false advertising and promotion of Unapproved Compounded Drugs that are neither Ozempic® nor Wegovy®.

## JURISDICTION AND VENUE

13.   The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).  The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

14.   Defendant is subject to personal jurisdiction in this Court because Defendant is registered in the State of Florida and has a principal place of business in this District.

15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufacture and/or sell its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® AND WEGOVY® TRADEMARKS

16.   Plaintiffs use the trademarks "Ozempic" and "Wegovy" to identify and promote the FDA-approved Ozempic® and Wegovy® medicines.  The

Ozempic® and Wegovy® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

17.    The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

18.    The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

19.    The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.

20.    The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

21.    The Ozempic® and Wegovy® medicines have been extensively studied in clinical trials and are FDA-approved.

22.    Each of the Ozempic® and Wegovy® medicines has a unique safety and efficacy profile which is detailed in its respective product label.

23.    The Ozempic® and Wegovy® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

24.     Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

25.     The Ozempic® trademark is inherently distinctive.

26.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites ozempic.com and novonordisk-us.com. As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

27.     Plaintiff NNAS is the owner of U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical preparations, in International Class 5. A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

28.     Novo Nordisk's right to use its registered Ozempic® mark is incontestable.

29.     Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021, and has used it continuously since that time.

30.     The Wegovy® trademark is inherently distinctive.

31.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com. As a result of its use of the

6

Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

32.    Plaintiff NNAS is the owner of (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5. True and correct copies of Plaintiff's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

33.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic®, Wegovy®, and Rybelsus® trademarks and medicines, the Ozempic®, Wegovy®, and Rybelsus® marks are exclusively associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets of Novo Nordisk.

34.    As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known, strong, and famous marks, and became such prior to any of the acts of Defendant complained of herein.

## DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS

35.     Novo Nordisk has not authorized Defendant to use its marks, has not provided Defendant with Novo Nordisk's FDA-approved semaglutide medicines, and does not sell the bulk semaglutide in Novo Nordisk's FDA-approved semaglutide medicines to any compounding pharmacies from which it may be sourcing its Unapproved Compounded Drugs.

36.     Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

37.     The FDA has not approved the Unapproved Compounded Drugs

38.     On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

39.     The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

40.     According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

41.     The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]  As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug.[5]

42.     Based on data as of June 30, 2024, the FDA's Adverse Event Reporting System (FAERS) database includes 542 cases of adverse events associated with compounded "semaglutide."[6]  Of those cases, 388 were classified as "serious" adverse events, 124 reported hospitalization, and ten involved

---

[3]     Compounding     Laws     and     Policies,     https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

[6]     FDA     Adverse     Event     Reporting     System     (FAERS)     Public     Dashboard, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited July 31, 2024).

deaths, more than twice the number of adverse events for all compounded drugs in 2022.

43.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7]  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

44.    The FDA has stated that the containers and packaging used by compounders, including multidose vials and prefilled syringes, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.[8]

45.    A previous publication from the Journal of the American Pharmacists Association also highlighted administration errors where patients accidentally self-administered doses of compounded "semaglutide" up to 10 times greater than the intended amount.[9]

46.    FDA has issued guidance on "Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss," which provides that: (1)

_____

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.
[8] *Id.*
[9] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

"compounded drugs are not FDA-approved or evaluated for safety and effectiveness"; and (2) "FDA has received adverse event reports after patients used compounded semaglutide. Patients should not use a compounded drug if an approved drug is available to treat a patient. Patients and health care professionals should understand that the agency does not review compounded versions of these drugs for safety, effectiveness, or quality."

### DEFENDANT'S TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

47.     Despite the foregoing, and well after NNAS's first use and registration of its Ozempic® and Wegovy® marks, Defendant has used Novo Nordisk's Ozempic® and Wegovy® trademarks to market and sell Unapproved Compounded Drugs purporting to contain "semaglutide" that are neither the Ozempic® nor Wegovy® medicines, and has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

48.     Defendant unlawfully advertises its Unapproved Compounded Drugs by making statements that describe the Ozempic® and Wegovy® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

49.     Defendant claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

50.    Defendant claims or implies that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Ozempic® and Wegovy® medicines.

51.    Defendant claims or implies that its Unapproved Compounded Drugs are generic versions of the Wegovy® and Ozempic® medicines.

52.    The claims in the preceding three paragraphs are false and misleading.

53.    On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits, including by passing off its Unapproved Compounded Drugs purporting to contain "semaglutide" as the Ozempic® and Wegovy® medicines or authorized variations of those medicines.

54.    Defendant's prominent and misleading use of the Ozempic® and Wegovy® marks is likely to cause patients to believe falsely that they are actually purchasing genuine Ozempic® and Wegovy® medicines; that Defendant is a source for Novo Nordisk's FDA-approved semaglutide medicines; and/or that Defendant's services are provided, licensed, sponsored, authorized, or approved by Novo Nordisk.

55.    Defendant's use of the Ozempic® and Wegovy® marks is without the permission, consent or authorization of Novo Nordisk. Defendant has no right to use, and Defendant knows that it has no right to use, the Ozempic® and Wegovy®

marks in connection with Defendant's Unapproved Compounded Drugs or otherwise.

56.    Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendant, including the Unapproved Compounded Drugs.

57.    Defendant's false advertising is reflected in the paragraphs that follow, as well as **Exhibit D** hereto.

58.    Defendant falsely claims in its promotional materials that its Unapproved Compounded Drugs have been approved by the FDA and have been subjected to clinical studies and trials.



## VALUING YOUR SUCCESS

Our weight loss counselor, L'Orien Parr, knows that a patient's experience and comfort level with their medical professional are key to building confidence and trust in their decision and happiness with the overall outcome. She has over 12 years experience in the industry.

Likewise, having a great weight loss management counselor is just as import. L'Orien will help you embark on your weight loss journey and will cheering you from the the sidelines all the way to the finish line.

We offer a maintenance program to keep you on track so that you are feeling at your peak, post weight loss goals for health and wellness.

## OUR PROGRAM

Four-Week Weight Loss Program
- Evaluation and Exam
- Initial lab tests, EKG and body fat analysis
- Personalized Diet Plan
- FDA approved Semaglutide and appetite suppressants when medically indicated
- Weekly B12 injections and follow up office visits

## SEMAGLUTIDE FOR WEIGHT LOSS

The FDA recently approved the use of the diabetic drugs, Semaglutide and Tirzepatide, for weight loss. We are very excited to be able to offer this option as part of our weight loss program. For the medically qualified patient, this is a great option for weight loss. Please contact us for more information or to set up a complimentary consultation.

Semaglutide Weight Loss Tampa
TirzepatideWeight Loss Tampa
Physician Supervised Weight Loss Tampa

59. In reality, the FDA has not reviewed, let alone approved, Defendant's Unapproved Compounded Drugs and has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality.

60.    Novo Nordisk's FDA-approved medicines are the only drugs containing semaglutide to have been the subject of clinical trials.  On information and belief, no such studies or data exist for Defendant's Unapproved Compounded Drugs.

61.    As depicted below, Defendant has advertised and continues to advertise its Unapproved Compounded Drugs on social media using "#ozempictampa" and "wegovytampa" hashtags, diverting traffic from Plaintiffs' FDA-approved medicines and creating a likelihood of confusion among consumers as to the source of the Unapproved Compounded Drugs:



62.     On information and belief, Defendant has engaged and continues to engage in these unlawful practices to attract customers and generate revenues and profits.

63.     Defendant has used and continues to use the Ozempic® and Wegovy® marks without the permission, consent or authorization of Novo Nordisk to promote its Unapproved Compounded Drugs. Defendant has no right to use, and

Defendant knows that it has no right to use, the Ozempic® and Wegovy® marks in connection with Defendant's Unapproved Compounded Drugs or otherwise.

64.    There is no need for Defendant to use the Ozempic® and Wegovy® trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

65.    Defendant's false and misleading statements and practices are likely to cause mistake and deception in the marketplace.

66.    Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

67.    On information and belief, unless enjoined by this Court, Defendant will continue to use the Ozempic® and Wegovy® marks and otherwise falsely

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested.").

advertise its products as associated with or being the Ozempic® and Wegovy® medicines, all in violation of Plaintiffs' rights.

68.    On information and belief, unless enjoined by this Court, Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks will continue to cause confusion, mistake, and deception, and infringe Plaintiffs' established exclusive rights in those trademarks.

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement in Violation of 15 U.S.C. § 1114(1)**

69.    Plaintiff NNAS realleges and incorporates each allegation in paragraphs 1–68 of this Complaint as though fully set forth here.

70.    Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

71.    Plaintiff NNAS's right to use its Ozempic® mark is incontestable and therefore constitutes conclusive evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

72.    Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the marks in commerce on or in connection with the goods identified in the registrations.

73. By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendant with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

74. Defendant uses the Ozempic® and Wegovy® marks in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

75. Defendant's use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

76. The above-described acts of Defendant constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

77. Defendant has unfairly profited from its trademark infringement.

78. By reason of Defendant's acts of trademark infringement, Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

79. Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

80. Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

81.     By reason of Defendant's acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff NNAS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

82.     By reason of Defendant's willful acts of trademark infringement, Plaintiff NNAS is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

83.     This case is exceptional, making Plaintiff NNAS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### False and Misleading Advertising and Promotion
### in Violation of 15 U.S.C. § 1125(a)(1)(B)

84.     Plaintiffs reallege and incorporate each allegation in paragraphs 1–68 of this Complaint as though fully set forth here.

85.     Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

86.     Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and/or qualities of Defendant's business practices and products, as set forth above.

87. Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful. On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes false or misleading statements, including those described herein and in the exhibits hereto.

88. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

89. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

90. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

91. By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

92. Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

93.     Because the above-described acts of Defendant are willful, the Court should award disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117 to Plaintiffs.

94.     This case is exceptional, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

95.     Plaintiffs reallege and incorporate each allegation in paragraphs 1–68 of this Complaint as though fully set forth here.

96.     The above-described acts of Defendant constitute common law unfair competition.

97.     The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

98.     By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

99.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

100.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

101.   Because Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendant's profits and corrective advertising costs to Plaintiffs.

## FOURTH CAUSE OF ACTION

### Deceptive and Unfair Trade Practices in Violation of § 502.21, *et seq.*, Florida Statutes

102.   Plaintiffs reallege and incorporate each allegation in paragraphs 1–68 of this Complaint as though fully set forth here.

103.   The above-described acts of Defendants constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of Florida law, including Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 502.201, *et seq.*, Florida Statutes.

104.   FDUTPA is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair trade practices in the conduct of any trade or commerce." FDUTPA § 502.201.

105.   The above-described acts of Defendants have been made in the conduct of Defendants' business, trade, or commerce.

106.   Members of the public are likely to suffer injury from the above-described acts of Defendants by purchasing a drug that they believe to be equivalent to Plaintiffs' FDA-approved semaglutide medicines, Ozempic® and

Wegovy®, not an Unapproved Compounded Drug that does not have the same safety, quality, and effectiveness assurances as approved drugs.

107.   By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with its trademarks.

108.   Defendants have unfairly profited from the actions alleged.

109.   By reason of Defendants' acts, Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted by Defendants. Accordingly, the Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendant's profits and corrective advertising costs to Plaintiffs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.   That the Court enter a judgment against Defendant that Defendant has:

   a. Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks in violation of 15 U.S.C. § 1114(1);

   b. Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

   c. Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

24

    d. Engaged in unfair competition under the common law and violated FDUTPA, Section 502.201, *et seq*., Florida Statutes.

2. That the Court find that each of the above acts was willful.

3. That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

    a. using the Ozempic® and Wegovy® marks, including (i) use in any manner that is likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

    b. advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

        i. are, or contain, genuine or authentic Novo Nordisk Ozempic® or Wegovy® medicines;

        ii. are sponsored by or associated with Novo Nordisk;

    iii.  are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

    iv.  achieve or have been shown or proven to achieve certain therapeutic results, effects, or outcomes, including by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

    v.  achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines and/or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

    vi.  are associated or connected with Novo Nordisk or Novo Nordisk's medicines; or

    vii.  contain any ingredient (including but not limited to semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.  engaging in any unfair competition with Plaintiffs; and/or

d.  engaging in any deceptive acts or practices.

4.    That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a)

the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.   That the Court award Plaintiffs monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair competition and that this monetary relief be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117 and any applicable state laws.

6.   That the Court award disgorgement of Defendant's profits resulting from Defendant's infringement of Plaintiffs' rights and by means of Defendant's unfair competition to Plaintiffs.

7.   That the Court order Defendant to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

8.   That the Court award Plaintiffs punitive damages by reason of Defendant's willful unlawful actions.

9.   That the Court award Plaintiffs pre-judgment and post-judgment interest on all damages.

10.     That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, Fla. Stat. § 501.2105, and any other applicable provision of law.

11.     That the Court award Plaintiffs the costs of suit incurred herein.

12.     That the Court award such other or further relief as the Court may deem just and proper.

September 30, 2024              Respectfully submitted,

By:   */s/ Jordan S. Cohen*
Jordan S. Cohen, Esq. (551872)
WICKER SMITH O'HARA MCCOY
FORD P.A.
515 East Las Olas Boulevard, Suite
1400
Fort Lauderdale, FL 33301
TEL: (954) 847-4834
FAX: (954) 760-9353
jcohen@wickersmith.com

***Attorneys for Plaintiffs***
***NOVO NORDISK A/S and***
***NOVO NORDISK INC.***